IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SHEILA N.,                                    :
                                              :
            Plaintiff,                        :
                                              :
      v.                                      :   Case No. 3:25-cv-00290
                                              :   Judge Michael J. Newman
                                              :   Magistrate Judge S. Courter M. Shimeall
COMMISSIONER OF                               :
SOCIAL SECURITY,                              :
                                              :
            Defendant.                        :

## REPORT AND RECOMMENDATION

Plaintiff, Sheila N., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on July 19, 2022, alleging disability as of June 23, 2020, due to the following: anxiety; left atrial heart valve leaking and a hole in her heart; manic depression; COPD; ABS with aortic valve stenosis; GERD; Barrett's esophagus; dysphagia; high cholesterol; and heart disease. (ECF No. 7, PAGEID #: 351.) Plaintiff's applications were

1

denied initially and upon reconsideration.  (*Id.* at PAGEID #: 89–98, 111–21.)  Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").  (*Id.* at PAGEID #:  159–60.)  The ALJ heard the matter on January 28, 2024, and, on August 2, 2024, issued a partially favorable decision finding disability as of May 4, 2024, but not before.  (ECF No. 7,  PAGEID #: 37–60.)

The ALJ found that Plaintiff met the insured-status requirements of the Social Security Act through June 30, 2008, and applied the five-step sequential process[1] to evaluate her applications. (ECF No. 7, PAGEID #:  43.)

- Step One: The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 23, 2020, the alleged onset date. (*Id.*)

- Step Two: The ALJ found that since the alleged onset date of disability, Plaintiff had the following severe impairments: mitral valve disorder; hypertension; hypotension; chronic obstructive pulmonary disease (COPD); cerebrovascular accident (CVA); anxiety; depression; and bipolar disorder. (*Id.*)

- Step Three: The ALJ found that since June 23, 2020, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*).

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for a total of four hours in an eight-hour workday; she can never climb ladders, ropes, and scaffolds; she can tolerate occasional concentrated exposure to dusts, odors, fumes, and pulmonary irritants; and she should avoid exposure to unprotected heights, dangerous machinery, and commercial driving. She can perform simple, routine[] tasks, but not at a production rate pace and without strict performance quotas; she can tolerate occasional, superficial[] contact with coworkers, supervisors, and the public with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals, but lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; she cannot do any work requiring teamwork or tandem tasks; and she can tolerate occasional changes in routine work setting, defined as one to two per week.

(ECF No. 7, PAGEID #: 45–46.)

- Step Four: The ALJ determined that Plaintiff had no past relevant work. (*Id.* at PAGEID #: 50.)

- Step Five: Relying on the vocational expert's ("VE") testimony, and considering her age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could have performed, such as a routing clerk, mail clerk, or office helper, prior to May 4, 2024. (*Id.* at PAGEID #: 50–51.) But, beginning on May 4, 2024, the date Plaintiff's age category changed, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at PAGEID #: 51.) In other words, the ALJ concluded that Plaintiff was not disabled prior to May 4, 2024, but became disabled on that date and has continued to be disabled through the date of this decision. (*Id.* at PAGEID #: 52.)

The Appeals Council denied Plaintiff's request for review, and this matter is properly before

this Court. (*Id.* at PAGEID #: 24–29); (ECF No. 1.)

3

## II.    RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to Plaintiff's claimed errors.  Rather than summarizing that information here, the Undersigned will refer and cite to the record as necessary below.

## III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the

ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.     ANALYSIS

Plaintiff asserts two errors: (1) the ALJ reversibly erred by failing to articulate the persuasiveness of the consistency factor when evaluating the opinion of the consultative examiner, Robert Kurzhals, Ph.D.; and (2) the ALJ reversibly erred by failing to follow the Commissioner's own Social Security Ruling 16-3p ("SSR"). (ECF No. 8, PAGEID #: 873–83; ECF No. 12 at PAGEID #: 914–18.) The Court addresses each in turn.

### A.     The ALJ's Evaluation of Dr. Kurzhals' Opinion

Plaintiff first contends that the ALJ failed to properly evaluate the medical opinions of consultative examiner, Dr. Kurzhals, under 20 C.F.R. § 404.1520c(c) with respect to the consistency factor. (ECF No. 8, PAGEID #: 873–80.) The Commissioner counters that the ALJ did articulate the persuasiveness of the consistency factor when evaluating the opinion of consultative examiner Dr. Kurzhals, because he had previously discussed how he found Plaintiff's subjective statements inconsistent with the evidence in the record, and that any error was harmless. (ECF No. 11, PAGEID #: 906–08.)

An ALJ's RFC determination must be "based on all of the relevant medical and other evidence" in a claimant's case record. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations describe five categories of evidence: (1) objective medical evidence, (2) medical

opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).  An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a).  Instead, an ALJ must use the following factors when considering those categories of evidence: (1) Supportability; (2) Consistency; (3) Relationship with the Claimant; (4) Specialization; and (5) Other Factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements."   20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).   Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered.  *Id.*  And even though an ALJ may discuss how they evaluated the other factors, they are not generally required to do so.  *Id.*

Here, Plaintiff only challenges the consistency factor.  The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources.  20 C.F.R. § 404.1520c(c)(2).  "ALJs must provide a 'minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court.'" *Farrah W. v. Comm'r of Soc. Sec.*, No. 3:22-cv-374, 2024 WL 514496, at *8 (S.D. Ohio 2024) (citation omitted), *report and recommendation adopted*, 2024 WL 865414 (S.D. Ohio Feb. 29, 2024).  This analysis does "not require those explanations to contain a specific level of detail, but instead contemplate that the appropriate level of articulation will necessarily depend on the unique

6

circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3834, 2023 WL 3764304, at \*7 (S.D. Ohio June 1, 2023) (internal quotations omitted). However, "it is the obligation of the ALJ 'in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source.'" *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at \*4 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021)).

"To analyze inconsistency, the ALJ should have explained specific instances of inconsistency in the record, as opposed to a general statement concerning the record as a whole." *Westover v. Comm'r of Soc. Sec.*, No. 4:24-CV-02204-SL, 2025 WL 2611399, at \*9 (N.D. Ohio Sept. 9, 2025), *report and recommendation adopted*, 2025 WL 2720743 (N.D. Ohio Sept. 24, 2025); *see also Farrah W.*, 2024 WL 514496, at \*7 (finding that the ALJ failed to properly evaluate the consistency factor when he did not compare the expert's opinion to the plaintiff's treatment history or other evidence from the record).

In February 2023, Dr. Kurzhals psychologically evaluated Plaintiff relating to her claim for mental disability benefits. (ECF No. 7, PAGEID #: 732–37.) Plaintiff reported that her last mental health treatment was in 2010 and that she has learned how to deal with her symptoms in the years since. (*Id.* at PAGEID #: 734.) Plaintiff presented as clean and appropriately groomed, had normal speech, displayed no evidence of hallucinations or abnormal thought content, and was friendly and cooperative. (*Id.* at PAGEID #: 735.) She reported feeling depressed and was occasionally tearful, and also reported feeling anxious and displayed a tense demeanor. (*Id.*). Dr. Kurhzals noted that Plaintiff showed fair attention and concentration and was able to understand and follow simple

directions.  (*Id.*).  He felt that Plaintiff's intellectual functioning was in the average range.  (*Id.*).

He further noted Plaintiff reported she was diagnosed with "manic depression" around 2010 when

she last received mental health treatment, but the symptoms she described and her presentation were

more consistent with her history of trauma.  (*Id.* at PAGEID #: 736.)

As noted by the ALJ, Dr. Kurzhals did not provide his opinion in functional terms or note

the degree of limitation as to the four areas of mental functioning ("Paragraph B criteria").  20

C.F.R. § 416.920a.  Instead, Dr. Kurzhals summarized Plaintiff's subjective complaints and his own

observations to conclude that the information suggests "there may be limitation" or "there is a

limitation" as to each category.  (*Id.* at PAGEID #: 736–37.)

Based on this lack of specificity, the ALJ determined that Dr. Kurzhals' examination report

was "not persuasive."  The ALJ summarized Dr. Kurzhals' opinion as follows:

> After completing a consultative psychiatric examination of the claimant, Robert
> Kurzhals, Ph.D. concluded there "may be limitation" in the claimant's ability to
> understand, remember, and carry out instructions; there "may be limitations" in her
> ability to sustain concentration and persist in work-related activity at a reasonable
> pace; "there is limitation" in the claimant's ability to maintain effective social
> interaction on a consistent and independent basis, with supervisors, coworkers, and
> the public; and "there is limitation" in the claimant's ability to deal with normal
> pressures in a competitive work setting (Ex. 12F/6). This opinion, to the extent it is
> an opinion, is not persuasive. It does not express the claimant's residual capacity in
> functional terms, nor does it describe the degree to which the claimant is limited in
> any of the functional domains. Nonetheless, it is based on an examination of the
> claimant. However, it appears that Dr. Kurzhals relied, at least in part, on the
> claimant's subjective reporting about the frequency and severity of her symptoms
> in providing his statements.

(ECF No. 7, PAGEID #: 50.)

Upon review, the Undersigned agrees with Plaintiff that the ALJ erred with respect to his

consistency analysis.  The ALJ does not compare Dr. Kurzhals' opinion to other medical evidence

or nonmedical evidence. Even though Dr. Kurzhals' opinion was vague and provided no degree for Plaintiff's mental limitations, that did not excuse the ALJ from analyzing the opinion under the relevant factors. *See Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-00188, 2023 WL 8614065, at *7 (S.D. Ohio Dec. 13, 2023), *report and recommendation adopted*, No. 2:23-CV-00188, 2024 WL 689322 (S.D. Ohio Feb. 20, 2024) ("Today, an ALJ who dismisses a psychological opinion solely because it is 'speculative' risks running afoul of the new articulation requirements.")

That said, as the Magistrate Judge explained in *Tracy F.*, finding an error does not always require reversal. *Id.* Instead, the Undersigned finds that, under these circumstances, the Commissioner has the better of the arguments on this issue. That is, even if the ALJ did err in evaluating the consistency factor, any error was harmless because Dr. Kurzhals' opinion was vague, did not opine a specific degree of limitations, and thus, would not have been instructive in the ALJ's crafting of the RFC. *See Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-CV-4932, 2022 WL 765217, at *4 (S.D. Ohio Mar. 14, 2022) (finding harmless error when the ALJ discounted a vague medical opinion noting a "somewhat elevated risk" in certain categories because, even if the opinions were given "full credence" on consistency, "they still would not be 'stated using vocationally relevant terms'" or "guide the ALJ to a more limited residual functional capacity").

Plaintiff contends that any error of law requires reversal, but that is not necessarily the case. (ECF No. 8, at PAGEID #: 880.) Although the Sixth Circuit has not yet addressed whether a harmless error analysis can be applied to an ALJ's failure to explain the supportability or consistency factors under 20 C.F.R. § 404.1520c(b)(2), district courts in this Circuit have found that the harmless error analysis articulated in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir.

2004) can be applied to an ALJ's evaluation of a medical-source opinion under those new regulations. *See, e.g.*, *Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *4 (S.D. Ohio Mar. 5, 2024) (citing *Musolff v. Comm'r of Soc. Sec.*, No. 1:21-CV-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022) (citing cases), *report and recommendation adopted,* No. 1:21-CV-1739, 2022 WL 1568478 (N.D. Ohio May 17, 2022); *see also Jason M. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00272, 2022 WL 4591305, at *6–7 (S.D. Ohio Sept. 30, 2022)); *Wilson C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-457, 2022 WL 4244215, at *6–7 (S.D. Ohio Sept. 15, 2022). Courts have reasoned that, because 20 C.F.R. § 404.1520c "is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement," it logically follows that *Wilson*'s harmless error analysis would apply to its replacement, as they aim to achieve the same goals. *See Burba v. Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020) (finding that the "regulatory predecessor to 20 C.F.R. § 404.1520c, 20 C.F.R. § 1527(d)(2)" share the same goals).

The Undersigned agrees with the analysis set forth by other courts in this Circuit and therefore finds that "an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met." *Wilson*, 2022 WL 4244215, at *6–7 (citing *Wilson*, 378 F.3d at 547). But, "[s]uch an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical

opinion." *Bryan W. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00281, 2023 WL 5847649, at *5 (S.D. Ohio Sept. 11, 2023) (collecting cases).

Here, applying the *Wilson* test, the Undersigned finds that any failure by the ALJ to address the consistency factor was harmless because, under the first *Wilson* factor, Dr. Kurzhals' opinion was patently deficient due to its lack of articulable degree of mental functional limitations. The Sixth Circuit has found medical opinions to be patently deficient when they lack evidentiary support or sufficient explanation, such as in the case of a check-box form. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–75 (6th Cir. 2016) (finding an ALJ's failure to meet the regulatory requirements was harmless error because the check box form without evidentiary support was "weak evidence at best" and met the Sixth's Circuit's "patently deficient" standard); *see also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and checkmarks" failed under *Hernandez*). Arguably, a medical assessment that lacks any quantifiable (or more specific) estimate as to a plaintiff's degree of functional limitation is just as unhelpful as a check-box form opining a degree of limitation without explanation. Indeed, in this case, even if the ALJ found Dr. Kuzhals's opinion to be persuasive, there were no tangible, specific restrictions to incorporate into the RFC. *See Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5315, 2023 WL 1857822, at *8 (S.D. Ohio Feb. 9, 2023), *report and recommendation adopted*, 2023 WL 2692415 (S.D. Ohio Mar. 29, 2023) (finding a medical opinion to be patently deficient when it "provided no functional limitations and no specific assessments on which the ALJ could otherwise rely" such that any error by the ALJ was harmless); *see also Penn*

11

*v. Comm'r of Soc. Sec.*, No. 1:19-CV-00389, 2020 WL 1288809, at \*3 (N.D. Ohio Mar. 18, 2020) (finding a medical opinion to be "patently deficient in that it gave no actual functional limitations" such that harmless error applied to the ALJ's analysis of the opinion). Thus, the Undersigned finds that Dr. Kuzhals' opinion was patently deficient because it lacked any degree or specification as to Plaintiff's mental functional limitations such that the ALJ's failure to analyze the consistency factor with respect to the opinion was harmless error.

Moreover, the Undersigned finds that Plaintiff has not demonstrated any prejudice by the ALJ's rejection of Dr. Kurzhals' opinion. As the Commissioner argues, the ALJ's RFC did include limitations with respect to Plaintiff's mental functioning, finding that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing itself. (ECF No. 11, at PAGEID #: 908) (citing ECF No. 7, at PAGEID #: 44–45.) Plaintiff has not articulated any additional limitations opined by Dr. Kurzhals that should have been included and were not. *See Tracy F.*, 2023 WL 8614065, at \*5 (finding no prejudice when plaintiff failed to identify any opined mental RFC limitation that the ALJ rejected). As such, Plaintiff has failed to demonstrate she was prejudiced by the ALJ's rejection of Dr. Kurzhals' opinion.

Finally, Plaintiff further contends that the ALJ's error is not harmless because Dr. Kurzhals' opinion is arguably consistent with Plaintiff's treatment provider, Amanda Saunders, FNP. (ECF No. 8, at PAGEID # 880.) This too fails to persuade. The ALJ found Ms. Saunders' opinion to be unpersuasive because it lacked evidentiary support for the extreme limitations—limitations the ALJ found contradicted Ms. Saunders' own treatment notes and the other record evidence. (ECF No. 7,

at PAGEID #: 49–50.)  Plaintiff does not articulate, however, how Ms. Saunders' opinion is consistent with Dr. Kurzhals' opinion.  Nor does the Undersigned otherwise find that Ms. Saunders's check-box form, which notes only extreme limitations with little explanation, is consistent with Dr. Kurzhals' vague, non-specific opinion that "there may be limitation" or "there is limitation" in her mental functioning.  (*Compare* ECF No. 7, at PAGED #: 862–64, *with* PAGEID #: 736–37.)

For these reasons, the Undersigned recommends that Plaintiff's first statement of error be overruled.

### B.      The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ erred by finding her allegations not credible because she did not seek mental health treatment without considering possible reasons for that failure.  (ECF No. 8, PAGEID #: 883.)

When symptoms of disabling severity are alleged, the ALJ must follow a two-step process to evaluate those symptoms.  *See* SSR 16-3p; 20 C.F.R. § 404.1529(c)(2), (3).  First, the ALJ must evaluate whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  *Id.*  These symptoms must be supported by medical signs or laboratory findings.  *Id.*  Second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence according to seven factors.  20 C.F.R. § 404.1529(c)(2), (3).  Relevant here, these factors include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). While the ALJ is not required to analyze all seven factors, he must show that he considered the relevant evidence. *Kimberly C. v. Comm'r of Soc. Sec.*, No. 1:22- cv-637, 2023 WL 6807955, at *3 (S.D. Ohio Oct. 16, 2023) (citing *Roach v. Comm'r Soc. Sec.*, No. 1:20-cv-01853, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021)).

Finally, even though the ALJ's assessment of subjective complaints must be supported by substantial evidence and reflect consideration of the entire record, it is the ALJ—not the reviewing court—who determines whether Plaintiff's reported symptom are consistent with the record as a whole. *See Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007); *Molly M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-274, 2022 WL 336412, at *5 (S.D. Ohio Feb. 4, 2022) ("[I]t is not in this Court's province to reweigh the evidence or decide questions of credibility."). When an ALJ finds contradictions between medical evidence and a claimant's subjective reports, "discounting credibility to a certain degree is appropriate." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Therefore, "absent a compelling reason," an ALJ's credibility determination should not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the ALJ applied the relevant factors and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were

inconsistent with the record evidence. (ECF No. 7, PAGEID #: 47.) To arrive at this conclusion, the ALJ relied on Plaintiff's mild diagnostic testing and clinical observations, her conservative treatment, and her "robust range of activities of daily living" to discount the severity of her symptoms. (*Id.*)

The ALJ further discussed Plaintiff's mental health treatment based on anxiety and depression symptoms:

> Despite alleging disability based on anxiety and depression, [Plaintiff] did not receive specialized mental health treatment at any point during the period at issue. Indeed, she told a consultative examiner that her last mental health treatment was in 2010 and that she has learned how to deal with her symptoms in the years since (Ex. 12F/3). She presented for a new patient appointment with her primary care provider in September 2022 where she endorsed decreased mood, anxiety, and poor memory; however, findings on a mental status examination were within normal limits (Ex. 7F/2). In October 2022, she was reportedly diagnosed with bipolar disorder and started on lithium but was unable to sleep and went to the emergency room (Ex. 6F/4). She was alert and oriented with normal motor function and normal mood, affect, and judgment (Ex. 6F/6). After an unremarkable workup, she declined Ativan and was discharged home (Ex. 6F/7). She underwent a consultative psychiatric evaluation in February 2023 (Ex. 12F). She presented as clean and appropriately groomed, had normal speech, displayed no evidence of hallucinations or abnormal thought content, and was friendly and cooperative (Ex. 12F/4). She reported feeling depressed and was occasionally tearful (Ex. 12F/4). She also reported feeling anxious and displayed a tense demeanor (Ex. 12F/4). She showed fair attention and concentration and was able to understand and follow simple directions; the examiner felt that her intellectual functioning was in the average range (Ex. 12F/4). Aside from these findings, mental status examinations elsewhere in the record were normal throughout the relevant period (Ex. 2F/7; 5F/20; 6F/6; 7F/2, 4, 8; 18F/3).

(ECF No. 7, PAGEID #: 48.)

Plaintiff contends that the ALJ failed to consider legitimate reasons why she failed to comply with or seek treatment, and that his failure to do so violated the applicable regulations.

Upon review, however, the Undersigned finds that the ALJ gave proper consideration to the relevant factors when evaluating Plaintiff's subjective complaints.  First, contrary to what Plaintiff asserts, the ALJ did not discredit her subjective symptoms solely because she refused medication and did not seek treatment.  In fact, the ALJ noted and considered Plaintiff's own self-reported statement that she had "learned how to deal with her symptoms" as a reason for not seeking treatment.  (*See id.*)  Additionally, the ALJ is permitted to consider Plaintiff's refusal of medication when assessing the severity of her subjectively reported symptoms.  *See Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018) (finding that noncompliance with mental health treatment may reflect the impairment rather than a lack of symptoms, but an ALJ may nonetheless view noncompliance as an adverse factor when the record does not explain the absence of treatment or when the claimant's explanations are inconsistent).  Here, there was no indication that Plaintiff's failure to seek treatment was another symptom of her mental health impairment.  Finally, the ALJ also considered and cited to numerous instances where Plaintiff had normal mental health findings. (ECF No. 7, PAGEID #: 48 (citing ECF No. 7, at PAGEID #: 452, 568, 707, 709, 711, 867).)

Accordingly, the ALJ did not discredit Plaintiff's subjective symptoms based only on her lack of treatment and refusal to take medication.  Instead, he based his evaluation on consideration of the relevant factors.  The Undersigned therefore finds no compelling reasons to supplant the ALJ's credibility analysis and therefore recommends that Plaintiff's second statement of error be overruled.

16

## V.  CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VI.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**